WILBURN BILLINGS, PLAINTIFF IN ERROR, V. ELIJAH
FILLEY, DEFENDANT IN ERROR.

1. **Sale of Stock**: INCORRECT WEIGHT; EVIDENCE. One B. sold forty-two head of fat steers and one hundred and four fat hogs to F. at an agreed price per one hundred pounds. The stock was weighed on the scales of F. and delivered, and on the succeeding day it was discovered that the scales were incorrect. In an action by B. against F. to recover the difference between the weight of the stock given and the actual weight, *Held*, That a preponderance of the evidence showed that the scales of F. were incorrect, and that B. had thereby sustained damages.

2. ———: ———: RIGHTS OF SELLER: CONSIDERATION. Where a party sold stock to be paid for by weight, and said stock was weighed on the scales of the buyer, which on the next day were found to have been out of order, and to have favored the buyer, *Held*, That the seller was entitled to have the stock weighed correctly, and that a promise by him to pay the buyer a bonus to weigh the stock correctly was without consideration.

3. ———: ———: RATIFICATION OF CONTRACT. Where one F. purchased forty-two fat steers, which were delivered and accepted by him, and on the succeeding day, at the request of the seller, reweighed forty-one of said steers, but refused to accept the forty-second, but retained possession of said steer, and afterwards disposed of the same, *Held*, A ratification of the original contract, and the purchaser was liable to the seller for the purchase price agreed upon.

4. **Instructions**: EXCEPTIONS. Instructions not excepted to cannot be reviewed in the supreme court.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*A. Hardy*, for plaintiff in error.

*Hazlett & Bates*, for defendant in error.

MAXWELL, CH. J.

The plaintiff filed his petition in the court below, stating his cause of auction to be: "That on the 11th day of March,

1884, the parties to this action entered into a written agreement, whereby plaintiff sold defendant forty-two head of steers, at $5.35 per hundred pounds (from the weight there was to be taken three per cent for shrinkage, and no more), and one hundred hogs, at six cents per pound, said stock to be delivered at Filley, Gage county, Nebraska, from May 1st to 15th, and correctly weighed and paid for, on which defendant advanced to plaintiff $1,000 (said contract is attached to petition marked exhibit A). That all of said stock was delivered April 21st, 1884, and received and weighed on Filley's scales; that defendant's scales, on which he weighed said stock, were grossly incorrect and wrong, and did not give the true weights of said stock within at least twenty-five per cent, making the weights that much too low; that said forty-two steers were falsely and fraudulently weighed, so that their combined weights, as given by defendant, only aggregated 48,645 pounds, when, in fact, they weighed twenty-five per cent more, and not less than 60,606 pounds, of which fact plaintiff was wholly ignorant; and that after shrinking the three per cent, defendant only allowed plaintiff for $47,185\frac{65}{100}$ pounds, and paid plaintiff only $2,424.45 for said steers, whereas he should have been allowed and paid $3,155.52 therefor; that plaintiff was thereby wronged, cheated, and defrauded to the amount of $731.09; that said one hundred hogs were then by defendant falsely and fraudulently weighed upon said scales, so that their combined weight only aggregated 14,-335 pounds; that the hogs honestly weighed at least twenty-five per cent more, and not less than 17,918 pounds, of which fact plaintiff was then ignorant; that said Filley only allowed and paid plaintiff on account of said hogs $860.10, whereas he should have allowed him and paid therefor, $1,075.10, whereby plaintiff was further wronged, cheated and defrauded to the amount of $215.

"4th Paragraph. And for a further cause of action, plaintiff alleges that during and immediately after the

weighing of said stock plaintiff was satisfied in his own mind that the scales upon which the stock was weighed were wrong, and the weights given fraudulent and unjust to him; that the plaintiff then sold defendant nineteen more hogs to be weighed at Filley, and one other hog, for $20, all of which were delivered at Filley, April 22, 1884; that while weighing said last hogs, plaintiff discovered that said scales were grossly inaccurate and unjust; that said hogs weighed several hundred pounds less on the end of the scales where they stood while being weighed than on the other end, and not enough by several hundred pounds on either end, and that he had been grossly cheated and defrauded in weighing said stock the day before; and thereupon plaintiff insisted and demanded that said Filley again weigh all the said stock he had received of plaintiff under said contract, which said Filley refused to do, until he had first extorted from the plaintiff an agreement to pay said Filley $25 for reweighing the said stock, and to allow Filley to shrink said steers one more per cent, said Filley then having all of said stock in his possession, to which proposition the plaintiff, by force of circumstances, was compelled to do, and did agree to, upon the express condition that said Filley should correctly weigh all of said stock and make right the wrong already done plaintiff, which Filley agreed to do; that then Filley weighed forty-one head of said steers on another pair of scales of insufficient capacity, and wholly unfit for that purpose, and that the steers while being weighed rested much of their weight off said scales and on the frame surrounding them, and said frame rested wholly upon the ground, and bore up and supported much of the weight of said steers, so that their full and true weight could not be, was not given; yet the forty-one steers weighed fifteen pounds more than forty-two did the day before on said cattle scales. That said Filley then refused to weigh the other or forty-second steer, that he had weighed and accepted the day before, but has ever since kept, and now

33

has said steer, which Filley claimed weighed 1,050 pounds, and absolutely refused to go on and weigh said one hundred hogs, or any part thereof, and broke and ended the contract by which he was to reweigh all of said stock. Yet, having the said stock, and the whole business in his hands, said Filley wrongfully kept and retained out of purchase price of the last hogs the said sum of $25, so by him exacted for reweighing all of said stock, and kept and retained the further sum of $32.50 as a further shrinkage of said steers, one additional per cent, making in all $57.50, so by said Filley, of Filley, Nebraska, wrongfully kept and retained out of monies justly due and belonging to the plaintiff, whereby plaintiff has been further wrongfully cheated and defrauded by said defendant in the further sum of $57.50.    Plaintiff asks judgment for $1,005.50.

The plaintiffs exhibit "A." is as follows:

"FILLEY, NEB., March 11th, 1884.

"Received of Elijah Filley $1,000, as part pay on forty-two head of fat steers that I am now feeding, and which I am to feed from the first to the fifteenth of May next. Said cattle to be driven from feed lot on day of delivery, and stand one hour, and then weighed at Filley, and shrunk three per cent, for which Filley agrees to pay $5.35 per hundred pounds. Also one hundred head of choice hogs I am now feeding—now with the cattle—which I am to deliver at the town of Filley, for which I am to have six cents per pound, to be delivered from first to fifteenth of May. Should Filley advance any more money, Billings to pay ten per cent for it.

"[Signed.]    WILBURN $\overset{\text{His}}{\text{X}}$ BILLINGS.
$\underset{\text{Mark.}}{}$
ELIJAH FILLEY."

The defendant in his answer admits the making of the contract, and alleges that in pursuance thereof forty-two head of steers, and one hundred and four hogs, were delivered by the plaintiff to defendant, and that he has paid plaintiff for the same in full.

The reply is a general denial of new matter.

On the trial of the cause a verdict and judgment were rendered in favor of the defendant.

The plaintiff testified : "April 22d, defendant wanted the stock delivered next day.  I delivered next day forty-two steers, and one hundred hogs.  Filley weighed the stock. I could not read the writing.  I was dissatisfied with the weight of the steers.  There was a plank off the side, about as high as a steer's head.  Alva Lamb stood there.  When he punched the steers back to the other end of the scales I saw the beam run up.  I said: 'Filley, your scales are not right.'  He said, 'Ah! it's the wind.'  I said : 'The wind don't make two or three thousand pounds difference in the scales.'  Every time the cattle crowded to the south side the beam would go up.  I remarked this several times to him.  He said he knew they were right because he sold on them.  I told him: 'They are not right, and I think you know it.'  Weighed a bull after steers.  I knew scales were not right from weight of bull, but could not get Filley to examine them.  He stuck to it that they were right, and I was not a judge of scales.  We then weighed the hogs. That evening I sold Filley twenty other fat hogs, nineteen at five cents per pound, and one for $20, and took them up next day.  Alva Lamb, Miller, and Bill Grady were with me.  Filley was not there when we got there. His weigher, Boughman, weighed first eleven hogs, then drove on the other eight.  He weighed them.  I asked him to weigh them on south end of scales.  There they weighed two hundred fifty-five pounds more than on north end. This was on same scales the cattle and hogs were weighed the day before.  Mr. Filley then came down.  I told him there was something wrong with his scales, and was yesterday, and now I am going to convince you.  He said something had got between the sill and the frame, and the scales were all right.  I said: 'Let us find what it is.' He went to one end of frame and sawed between frame and

a piece of studding that had worked against it.   Got that off clean.   He then weighed the hogs on one end and then on the other end of the scales, and they weighed just the same as when Boughman weighed them.   We then took those eight hogs on to his office scales, and they weighed there four hundred eighty pounds more than they did on one end of cattle scales.   I then told him I wanted him to weigh the stock all over.   He said he could not do it, and wouldn't do it.   He said he would not weigh them over but would give me $225 to say no more about it.   I told him I wanted the weight of the stock and that was all I did want—agreeable to contract.   I told him I wanted him to weigh them over.   He said he would not.   He was not fixed to—had no other stock scales.   I told him I wanted them weighed over.   And he would not unless I shrunk the steers one per cent and gave him $25—that would make four per cent shrinkage.   He said if I would give $25 and shrink one per cent he would weigh the stock over and weigh them right.   I said rather than get in trouble I'd rather shrink one per cent and give $25 and weigh them over.   He said he would.   He put frame that was around cattle scales around his wagon scales and spiked frame to studding, and here he weighed all the cattle but one steer.   There was something the matter with the one.   He weighed forty-one steers.   Then he did not weigh the hogs over.   He was to weigh the stock all over—the hogs and cattle.   He took $50 out of the hogs I took up the next day, for weighing over and shrinkage of the steers.   He paid me some money on the first lot of stock the first day—that was on basis of first weights.   He has never settled in any other way.   The last I saw of the forty-second steer he was at Filley's.   He accepted him the first day and threw him out the second day.

## " CROSS-EXAMINATION.

" I cannot read nor write.   I had a man taking the weights.   He and Filley figured together.   It was Charley

Wininger, Alva Lamb and John Miller.` Miller was then working for me. I think they all agreed on their figures the first day. I was paid according to their figures and weights.

Q. 154. Now the agreement was, you say, between you, that you would weigh the stock over again and allow Filley, or pay him, $25?

A. Yes.

Q. 155. And four per cent shrinkage?

A. Yes.

Q. 156. You wanted him to weigh the hogs, did you?

A. I did. I don't think there was anything said about the hogs until we got done weighing the cattle. 'I told him I wanted the hogs weighed, that was my contract.' I wanted him to weigh them. Don't know that I asked him to weigh them, because I saw it was not worth while, seeing he would cheat me out of them. I did not want them weighed the way he weighed the cattle.

Q. 165. Is it not a fact that after you weighed the cattle you went in and settled up the whole business?

A. Never settled a thing; he took $50 out of last hogs I took in, and he was to give me $20 for a black sow, and agreeably they only figured nineteen hogs, and the black sow was never figured in.

Defendant objected and asked to have this answer stricken out.

Overruled. Defendant excepted.

Q. 176. He did not pay for the black sow and took out $25 and one per cent shrinkage?

A. Yes. Second day Filley did not tell me there was something wrong with scales, that they did not balance. I saw him clean them off with the saw and balance them. Cannot tell how many dollars I got the second day; got what the nineteen hogs came to, is my opinion, besides what they took out in one per cent weighing, and $25 for weighing the cattle over. That is what I lacked of getting

what the nineteen hogs came to. The steer not weighed the second day was a spotted three-year-old. He got down on scales the first day. Don't think I had any agreement with Filley about the steer, something wrong with him. He drove him into the yard. Think there was something said about my taking the steer back if he did not get well, the second day.

Q. 235. What was done about the settlement? Did you settle up on those new figures, you, and Brown, and Wininger and Miller?

A. Never had any settlement, only he took so much out of the hogs and I took the balance and went home.

Q. 256. The balance he paid?

A. The balance all paid, only the steer. He wanted I should take the steer home.

Q. 257. You agreed to take him?

A. I don't know whether I did or not. I don't know whatever became of the black hog. Charles Wininger helped drive steers up Filley's; aggregated weight 'first day, forty-two steers, 48,645 pounds. Said hogs weighed first day, aggregate weight, 14,335."

John I. Parker testified: "Am a millwright and carpenter. He removed these cattle scales after this stock was weighed. Found on side the cattle were driven in it was banked up with clay and there was a block under that to support the top of the frame, and that block had pressed against the adjustable frame and caused some friction. That is all I found. The block pressed against the platform. It was under the stationary platform that supports the scales."

Samuel Cowan testified: "I'm a carpenter. Parker called my attention to the block he spoke of. He showed me what was the matter with the scales."

The defendant testified: "The hogs and cattle were delivered April 21, 1884. We balanced the scales in the first place. They were correct. I did the balancing. I weighed

in different drafts. After last steer went on scales, balanced them and found fifty-five pounds of mud on the scales. Took one-half of fifty-five pounds for each draft, making twenty-seven and one-half pounds for each draft. We then weighed the hogs. Scales were all right at this time. Billings spoke once or twice to know if the scales were correct. I told him they were. He thought they did not weigh just exactly right each time. I think he was weighed a couple of times; my recollection is that there were about five pounds difference on the two weights. I accounted for it that it was the difference in the wind, or something made the difference, or a break in the scales. We figured the hogs at $6 a hundred; had figured the cattle already. We then settled up, and I finished paying him. No difference in the figures. No dispute as to figures. No objection made by Billings. One steer fell down near Billing's yard before we started. At my place he fell down on the scales. I told Billings, 'We will figure them up, and if he gets better I will pay for him. If he don't, you will take him back.' He said, 'All right.'

Q. 1,043. Was he included in the figures you paid him?

A. Yes, in this settlement. The next day, right after this settlement, I bought twenty hogs of Billings; one for $20—it was spotted—the other nineteen was to be $5.50 per hundred. While at dinner, Boughman, the man who weighs for me, came in and told me there was something wrong with the scales; I would have to go up. I went out, took hold of the beam to weigh the hogs, and I saw at once the scales were out of whack—something the matter with them. I weighed the hogs on one end of the scales; they weighed about 1,850 pounds. On the other end they weighed 2,000 and something. Billings was saying they were out of fix the day before, and I had beat him over $1,000 on the stock the day before. I told them to take the eight hogs on the scales—the office scales are

grain scales—and weigh them on the office scales. Billings and myself kept them together and went to the office scales and weighed these eight hogs there, and found they weighed over 2,300. Billings was in a sweat about it; thought he had been beaten that much the day before. I was in a sweat about it. We then weighed the twenty hogs on office scales; then we weighed the one hog we lumped off, and deducted its weight. This left 3,852 pounds I was to pay for, which came to $211.86. This did not include the black sow. I added to that $20 for her, making $231.86 for the twenty hogs, coming to him. Billings was then wanting to weigh the stock over I had bought the day before, claiming I beat him $1,000. I claimed all the time I had not beat him $1,000; there was not stock enough to beat him $1,000. He then testifies to how he figured the matter, if the scales were the same the day before, and made about $225. Billings would not take that, and wanted to weigh over. I said 'I will weigh over if you can get at it so as to make a fair shrinkage and run the cattle around.' He asked what I thought was right. I told him I would not have a bunch of cattle out of the yard for less than $25. I said, 'Give me $25 and shrinkage of cattle four per cent.' He says, 'I will do it.' So we went at it.

Q. 1,054. What was the reason of giving that shrinkage of one per cent more?

A. That would offset the drive of four miles the day before.

Q. Anything for feeding?

A. For the reason the cattle were filled up.

Q. 1,061. What was said about whether the hogs— what was said about them?

A. The talk was about the cattle principally. He spoke about weighing the hogs over. I said 'I will weigh the stock over; you pick out the hogs if you can get into the lot and sort them out, and we will weigh

them over.' I had about three hundred hogs in the yard. He then describes the manner of weighing; took rack off cattle scales and set them around office scales the best we could set them around the scales. They were nailed up, did not rest on scales, but on frame-work around the scales. There was one steer we did not weigh; he had a fit; the same one that tumbled over before. I said he was not right and I would not take him. He said 'All right, I will take him and work him off on the butchers.' Total gross weight of the forty-one steers was 48,-660 pounds. After deducting net weight was 46,714 pounds. I figured this amount at $5.35 a hundred, then deducted $25 for reweighing the cattle, leaving a balance they came to of $2,474.19. I said 'Now then we will weigh the hogs over.' He said he was satisfied it was weighed correct. I then took out $10.75 out of $231.86 for twenty hogs, and gave check for $221.11. He was to pay me back the $10.75 and take the crazy steer home. He seemed satisfied, any more than this, his cattle did not weigh as heavy as he expected. He said he was satisfied.

### CROSS-EXAMINATION.

Boughman is a fair weigher and pretty accurate at balancing the scales. If he had weighed a draft of hogs on these scales and they were in the condition I described when I came, I think he would have discovered it; think any man would. We call it four miles the stock was driven. The forty-one we weighed the second day weighed forty-one pounds more than the forty-two. We guessed the one we did not weigh at 1,000 pounds.

Q. 1,188. By the way, tell us what became of that steer? Where he is?

A. I don't know.

Q. 1,189. What did you do with him?

A. I kept him there in the lot waiting for Billings to take him away.

Q. 1,190. What became of him and what did you finally do with him? Is he in your lot yet?

A. I think not.

Q. 1,191. What did you do with him, Elijah?

A. I didn't do anything with him.

Q. 1,192. Haven't you sold him or sent him away to market, shipped him to market?

A. I told some parties there was a steer there that was not mine, and I did not care what became of him. I sold the forty-one steers to Wagner, of Chicago. I said to Billings on the 19th of May, 'You were going to take him away?' He said he wouldn't do it; said, 'You have bought the steer, you will keep him.' He went home without him. I says to the Chicago party, 'Go look at that steer, and if he is of any account you take him along;' and he went up and looked at the steer, and I think shipped him with his cattle.

Q. 1,213. You told Billings this would disturb the cattle a good deal to get them up and weigh them again, didn't you?

A. Yes. Here he is asked to explain, and testified : 'I don't think they would lose in weight so much, but it would be a damage to the cattle.'

Q. 1,216. They would lose in flesh?

A. Yes, in one sense of the word, I think they would.

Q. 1,221. Wear off $25 worth of flesh to drive them ten or fifteen rods on the scales and back again?

A. Think ten pounds, eight or ten pounds off from a steer.

Q. 1,222. You told Billings you would weigh them over if he would pay you $25?

A. I told him it would be worth $25 to weigh them over.

Q. 1,223. And then he must shrink them how much?

A. One per cent additional.

Q. 1,225. You were satisfied your scales were wrong?

A.   I was satisfied the scales were wrong at this time.

Q. 1,226.   But you would not weigh them over unless he allowed you $25 and shrunk them four per cent?

A.   As soon as I made the proposition he took me up. I had paid him for the stock the day before, and had the stock in my hands.   I think Wilks Gale bought hogs with me, you might say.

Q. 1,271.   Do you remember about telling him about five years ago, and while engaged in business, that you could not make money in the business and give honest and good weights?

Objected to as immaterial, irrelevant, incompetent and too remote.

Sustained.   Exception noted.

Q.   Did you offer Billings $225 to settle, after you discovered this difficulty?

A.   I think not.   I have heard the witnesses testify to that.   I think they are mistaken."

There is considerable other testimony in corroboration of the plaintiff to which it is unnecessary to refer.   It will be observed that the defendant does not deny the essential facts testified to by the plaintiff, that the scales would not weigh correctly; in fact he corroborates the plaintiff's testimony that the scales were incorrect, that forty-one steers weighed more on the office scales than forty-two had done the day before on the other scales; he also corroborates the plaintiff that he agreed to pay the defendant $25 to reweigh the stock delivered the day previous, and that he refused to reweigh the hogs.   His excuse is that the plaintiff expressed himself as satisfied with the weights the day before, and therefore stated that he did not desire to have the hogs reweighed; this statement is not very probable when we consider that the actual weight of the cattle was considerable more than the weights as given the day previous. A clear preponderance of the testimony tends to show that the scales, on which the forty-two head of cattle and the

one hundred and four hogs were weighed, were incorrect, and that the incorrect weights were in favor of the defendant, and that thereby the plaintiff sustained damages. If the scales were so arranged on purpose, it was a gross fraud on the plaintiff, and if accidental, the plaintiff should not be permitted to sustain loss by the mistake.

The defendant was to pay the plaintiff $5.35 per hundred for the steers, and six dollars per hundred for the hogs. These prices were for the actual weight of the stock so delivered, and when it was found that the scales were incorrect the plaintiff was entitled to have the stock weighed correctly, and this without payment of any consideration. Until the stock had been weighed correctly it had not, so far as the rights of the seller were concerned, been weighed—that is, the fraudulent or incorrect weighing of the stock was not a weighing within the meaning of the contract. The $25, therefore, which the plaintiff agreed to pay the defendant was a mere gratuitous promise, and for which he received no consideration.

2. Even had the promise been supported by a sufficient consideration, still unless the plaintiff waived the reweighing of the hogs the defendant failed to perform his part, and therefore is not entitled to recover.

3. As to the forty-second steer the defendant testifies: "I says to the Chicago party, 'Go look at that steer, and if he is of any account take him along,' and he went up and looked at the steer, and I think shipped him with his cattle."

This will make him liable for the value of the steer. This steer he purchased with the others, and received him the day the cattle were delivered, but on the second day, when the cattle were reweighed, he attempted to throw him back on the plaintiff. The steer, however, was left in the defendant's possession, and by him turned over to the parties who purchased the other steers, whether by gift or sale is immaterial to the plaintiff. The assumption of ownership

by the defendant ratified the previous contract and made him liable to the plaintiff for the contract price of the steer.

4. A large number of instructions were given in the case to which no exceptions were taken, therefore they cannot be reviewed by this court. The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.