ELIJAH FILLEY, PLAINTIFF IN ERROR, V. WILBURN BILLINGS, DEFENDANT IN ERROR.

[FILED MAY 31, 1889.]

1. **Evidence**: FALSE WEIGHTS AND MEASURES. In an action by B., who was the owner and vendor of certain beef cattle and fat hogs, against F., the purchaser of said cattle and hogs, for falsely weighing the same and refusing to correctly weigh and give the true weight thereof, to the plaintiff's damage, upon the evidence, facts, and circumstances, set out at length in the opinion, *held*, that the opinion of witnesses of long experience in raising, feeding, handling, and weighing, cattle and hogs, was admissible in evidence, for the purpose of establishing the falsity of such weight.

2. **Evidence** examined, and *held*, to sustain the verdict.

ERROR to the district court for Gage county. Tried below before APPELGET, J.

*L. W. Colby*, for plaintiff in error, cited: *B. & M. R. R. Co. et al. v. Beebe*, 14 Neb. 463; *Oakes v. Weston*, 45 Vt. 430; *Cook v. Brockway*, 21 Barb. 331; *B. & M. R. R. Co. v. Schluntz*, 14 Neb. 421; *Fry v. Bennett*, 3 Bosw. (N. Y.) 200; *Haynie v. Baylor*, 18 Tex. 498.

*A. Hardy*, for defendant in error, cited: *R. V. R. R. v. Arnold*, 13 Neb. 488; Wharton on Evidence, sec. 573.

COBB, J.

This cause was before this court at a former term on error to a former trial in the district court of Gage county. The judgment below, then, for the defendant, was reversed, and the cause remanded. The opinion is published in the 21st volume of our Reports, at pp. 511–25. Upon the second trial in the district court, a verdict and judgment were rendered for the plaintiff, and the cause is now brought forward again, on error, by the defendant.

Plaintiff in error, in his brief, presents fifteen points, which will be noticed separately or by convenient groups.

I. The plaintiff, being on the stand as a witness in his own behalf, after having stated the facts and circumstances of the sale by him to the defendant, of forty-two marketable steers, and a hundred and one fat hogs, testified that at the request of the defendant the hogs and steers should be delivered at his place and weighed, ready for shipment; some ten days earlier than had been originally intended, the cattle and hogs were driven to defendant's place of business. The examination and testimony of plaintiff were continued as follows:

Q. Now, after they were all driven up, the cattle and the hogs, where were they weighed?

A. They were weighed on those cattle scales.

Q. How many cattle were weighed?

A. Forty-two steers that day.

Q. How many hogs?

A. It appears to me one hundred and one hogs, as well as I remember.

Q. Who weighed them?

A. Mr. Filley.

Q. How were these scales situated as to standing, north and south, or east and west, lengthwise?

A. I think the cattle went, as well as I mind now, on the south side, and were driven out on the north or west side. I would not say which.

Q. Which side did they go in at?

A. On the south side.

Q. After they were driven in, state what position would they take.

A. Like all cattle driven in, they would beat back against the back side of the scales as much as possible, and crowd backward and forward.

Q. What transpired during the weighing of that stock that day?

A. When they went in they were driven in, and there was a board out on the north side of the cattle scales, up about as high as a steer's head, and when they were driven in they bulged up against that side, and I thought they were going to break out, maybe—run their heads through and break out. And there was a young man there who helped drive them up—Alva Lamb;—and when they acted like breaking out I told him to go and punch them back. Filley was weighing, and when he punched them back, the beam went up, and I said, "Filley, the scales are not right; and when they go to the south side the beam goes up, and when they come back the beam goes down." He said they were right; it was the wind. I said I didn't think the wind could make two or three thousand pounds difference. I told him they moved up and down as they went back and forward. We weighed them and drove them off; I noticed every draft; if they beat back south the beam would go up, and when they went north it would go down. I told him a good many times they were not right, and he said they were right, and kept flying out of humor, saying the scales were all right. I knew in my own mind they were not all right.

Q. How long have you had experience with cattle?

A. I have had experience with cattle for eight or ten years; ten, or twelve, or fourteen years, more or less, to no big extent.

Q. Have you fed cattle?

A. I have fed cows, and some steers once in a while.

Q. You have seen them weighed?

A. Yes, a good deal.

Q. State whether or not at that time you thought your cattle—what your opinion was as to whether your cattle were weighing near as much as they ought to or not.

Over the defendant's objection plaintiff answered, "Why, my opinion was they were not weighing near what they ought to; I saw that." * * *

Q. And *then* what was weighed?

A. We weighed the bull separately; we weighed the hogs then.

Q. Have you handled hogs a good deal?

A. Yes.

Q. And seen them weighed?

A. Yes.

Q. Have you fed them and weighed them?

A. Yes, for thirty years.

Q. You may state if you noticed anything in regard to the scales while he was weighing the hogs.

A. I don't know as I did; only I knew the hogs were not weighing by one-fourth as much as they ought to; that is all.

On defendant's objection, the above answer was stricken out as not responsive, and as immaterial, irrelevant, and incompetent.

Q. I will ask you what your opinion was as to whether your hogs were weighing as much as they ought to weigh or not, on those scales?

Over the objection of the defendant, plaintiff answered: No, I was certain they were not weighing as much as they ought to.

Q. By how much?

Over the objection of the defendant, plaintiff answered: I don't think they weighed by one-fourth as much as they ought to, at all.

Plaintiff further testified that he was dissatisfied as to the weight of the stock, but could not get Filley to examine the scales; he would not talk anything about it; he had bought on them, and sold on them, and knew they were right; he would not talk about it, or examine them; that plaintiff got defendant to weigh him, first on one end of the scales, then on the other; that he weighed twenty pounds more on the south end than on the north end of the platform; that defendant accounted for this by saying it was "the wind;"

that after that they settled up, defendant paying him agreeably to the weight of the stock as then weighed; that he asked defendant what he would give him for twenty hogs left in his pen at home; that they agreed upon a price, and plaintiff delivered the hogs the next day; that at the time of the delivery he found that defendant was not at home, but that Mr. Baughman, in defendant's employ, was there attending to business for him; plaintiff asked Baughman if he would weigh the hogs, and he went and balanced the scales, and plaintiff drove on eleven hogs and weighed them; then eight more, (one having been sold *per caput*, and not by weight;) that after weighing the eight hogs on one end of the scales, they were driven to the other end, and weighed again, and were found to weigh 225 pounds more than at the first; that plaintiff and Baughman then tried to ascertain the cause of the difference in weight on the opposite ends of the platform; that while they were engaged in clearing out the mud between the sills and the frame, with a spade and shingle, and testing the scales by driving the hogs and weighing them, from one end of the scales to the other, and noting the same difference in weight, the defendant returned and joined them in the search; that they then weighed a boy on the scales, and sent him, with another boy, to the scales at the railroad depot, to be weighed there; that the boys returned, and the one reported that he weighed thirty pounds more on the depot scales than at the defendant's scales; that they then drove the eight hogs last weighed up to the office scales, and weighed them there; that there was a difference in weight at the office or grain scales of 200 and odd pounds more than that of one end of the cattle scales, and of 480 pounds over the other end; that the hogs weighed the most on the grain scales — weighed 480 pounds, to the best of plaintiff's recollection, more than they did on the north end of the cattle scales, and 200 and some odd pounds more than they did on the south end; that plaintiff then said to defendant that "he wanted all

of his stock weighed over;" that defendant said that he could not weigh it over; that he was not fixed to weigh it over again; that between them "there was right smart talk about weighing it over, one way and another;" that plaintiff said to defendant that he had cheated him out of $1,000, the day before, in weighing that stock on those scales; that defendant replied that he could not have cheated him out of $1,000, as there was not stock enough for that; that the defendant then figured up in his book what the difference would be in the weight of the hogs, and that of the stock weighed the day before; that plaintiff did not look at his figures to see, and wouldn't have known if he had; that defendant said it would have made a difference of $225; that then a young man named Miller, and another named Alva Lamb, counted it up, and Miller said that the difference was $1,000 and three or four dollars; that defendant then proposed that plaintiff should take the $225 and not weigh the stock over; that plaintiff said that he would rather have it weighed again. Defendant insisted that he was not fixed to have it weighed, but would give plaintiff the $225 to say nothing more about it. Plaintiff told him that he was not satisfied about that, and proposed to take the stock somewhere else and weigh it. Defendant said, at last, that he would fix the scales and weigh it over, and weigh it right, if plaintiff would shrink the cattle one per cent, and allow him $25. Plaintiff told him if he wanted to do what was right, he would not want anything; he replied that it would injure the steers to drive them around, and he didn't want to do it. Plaintiff then said if defendant would weigh the stock over, and weigh it right, he would give him the $25, and shrink the cattle one per cent, which was agreed to, and plaintiff told him to go ahead.

The plaintiff's testimony was continued:

Q. What did you understand he was to weigh over?

A. The cattle and the hogs.

Q. Was that the stock you delivered the day before under the written contract?

A. Yes.

The plaintiff further testified that the defendant then went and tore the stock scales down and moved it up where they weighed the stock the day before, close to his office; he tore the frames away from that, and put them on the grain scales, around the scales; he set it on the solid sills of the wagon scales, (he called it,) and spiked it above on the studding, and fixed a gate at each end to drive the cattle in on it, then drove the cattle in and weighed them, forty-one head. The plaintiff described the manner in which the cattle were driven on and off the scales, and weighed, which is not deemed important to report, but was substantially that sometimes three got in on the platform, side by side, two on either side of the platform and one in the middle; that he didn't notice all the time, as he was down where Filley was weighing and could not watch both places at once; but generally two or three steers were together, side by side, crowding in pretty tight and standing at the edge; that they had to, when three went in, press very tight against the cattle rack; the boys standing round kept them from bursting out while he was weighing them. The plaintiff further testified:

Q. Do you know how much these forty-one that he weighed that day weighed in comparison to the forty-two that he weighed before in the way you have described?

A. I had it down.

Q. Did they weigh more or less?

A. I think they weighed a little more; some forty pounds, I think it was.

Q. Why didn't he weigh the forty-two steers?

A. There was something wrong with that one steer. When we drove him out, he fell. He was a wide-horned steer, and threw himself over and hurt his neck; I thought he had broken it; but he got up and went to the yard. I think he fell on the scales that day; but he got up and went with the cattle into the yard.

Q. Where did you leave that steer?

A. With Mr. Filley.

Q. How much was its weight?

A. Filley and Post guessed it at 1,050 pounds.

Q. Have you heard what Filley stated had become of it?

A. Only as he testified.

Q. What did he say?

A. That Chicago parties took him off, I think.

Q. After the weighing of the steers that day, what occurred about the hogs?

A. We went down into the lot and drove the steers up — me and some of the boys.   Filley said something to the effect that he would not weigh the hogs over, or could not. There was nothing more said about the hogs until he got the cattle weighed, and then he said he could not weigh the hogs over; they were among his other hogs; or something to that effect.

Q. Were the hogs ever weighed over, to your knowledge?

A. Not that I know of.

Q. After the weighing, this second day, what occurred between you and Filley — state what he did with regard to paying you?

A. We took out $25 for weighing the stock, and the shrinkage of the steers, I think one per cent.

Q. Do you remember how much that was?

A. It was fifty some odd dollars; it appears to me it was $57.   I cannot say for certain, but I think that was it.

Q. You cannot read or write?

A. No, sir.   I had the figures, but I could not tell anything about that; I did know, but I don't recollect.   That is as near as I can come at it.

Q. State whether or not, after taking out the $25 for reweighing, and one per cent for shrinkage, there was anything coming to you for the last hogs you drove there, the nineteen last weighed.

A. Yes, there was some money coming; I forget what it was; but whatever it was he paid me agreeably to weighing the last hogs after taking out the fifty odd dollars.

Q. What became of the forty-second steer? Was that counted in when he settled with you the second day?

A. No, there was nothing said about it. Filley proposed several times my taking it away and my putting it on the butchers'; but I had no idea of taking him, so I don't think there was much said about it.

Q. He was never accounted for, and you never had your pay for that steer?

A. No.

Q. Has he ever paid you anything more or further for this stock?

A. No, he never paid anything for it after what he paid then; agreeable to the weight the first day is all I got, only he took out some out of the hogs for weighing over.

Q. The forty-one steers the second day weighed a trifle more than the forty-two did the day before?

A. That is my recollection; it appears to me it was forty pounds more, but would not say exactly.

Q. State who went with you the first day to help you drive the cattle and hogs up there?

A. Winneger was present, and took the weight of the cattle and hogs; I hadn't any learning, and told him to take the weight down, and he did so. Alva Lamb was present, and I think he took the weights down, also John Miller, and Bill McGrady; there were several there when we weighed the cattle and hogs; I think Charles Treavis was by.

Q. Who was present at the weighing by Baughman and Filley?

A. Alva Lamb and Bill McGrady were by.

Q. Do you know if anything was weighed on those cattle scales of Filley's after he weighed the stock the first day, before he weighed the nineteen hogs the second day?

35

A. I don't know; I can't say anything only hearsay.

Q. Have you heard Filley or Baughman, his agent, say?

A. I heard Baughman state there was nothing weighed from the time the cattle was weighed, the day before my hogs were weighed.

The first error argued by the counsel of plaintiff in error is that arising upon the overruling by the court of his objections to the questions set out in the above quotation of testimony. There can be no doubt of the correctness of the counsel's proposition as a general rule. Where questions of damages are to be submitted to a jury, witnesses will not be allowed to state their opinion of the amount of such damages; and the same principle is applicable to many other cases of like import. That rule, however, is not conceived to be applicable to the question under consideration. One of the allegations of the petition is that the defendant's scales, upon which he weighed said stock, were grossly incorrect and wrong, and did not give weight of the stock to at least twenty-five per cent, making the value thereof at least twenty-five per cent of the weight too low. This allegation presented a question of fact, to be proved by the best evidence available. It may be conceded that had the cattle and hogs been under the plaintiff's control, with scales of acknowledged accuracy accessible, for the purpose of weighing, at the time and place of the controversy as to the weight of the stock, the rule which requires the best evidence would have obliged him to have reweighed the stock upon such scales, and to have given the result in evidence, on the trial, to the exclusion of the opinion of witnesses; but the facts, as testified to, leave it clear that the stock had passed beyond his control, and that the defendant would not consent to its being taken elsewhere for reweighing; nor does it appear that scales of acknowledged accuracy were then accessible to the plaintiff. The point is thus brought within the rule laid down in Wharton's Law of Evidence, vol. 1, sec. 511, as follows:

"*A fortiori*, whenever a condition of things is such that it cannot be reproduced and made palpable in the concrete to the jury, or when language is not adequate to such realization, then a witness may describe it by its effect on his mind, even though such effect be opinion." And again, in sec. 513, the same authority says: "In fine, in addition to the rule already given that opinion is admissible when it is fact in short-hand, it is not necessary for a witness to be an expert to enable him to give his opinion."

By referring to the evidence quoted, it will be seen that the plaintiff stated the peculiar facts in connection with the weighing of the stock; how that the stock weighed a great deal more when standing on the south end of the scales, or platform, than when weighed on the north end. The fact that a certain number weighed materially more, as indicated by the test of the scales, when standing on one end of the platform of the scales than when standing on the other, would of itself show that the scales were not right, and did not weigh with unvarying accuracy; but it would not show, nor even tend to prove, which of the two weights was the true one — whether the stock was made to weigh too little on the one end, or too much on the other — and in the absence of accurate and reliable means of determining, the opinion of witnesses of experience and sound judgment would be the best available evidence of the true weight of the stock.

II. The second point arises upon the alleged error of the court in admitting certain testimony of A. L. Stanhope as a witness for the plaintiff. All that need be said is that this point is identical with the question just considered.

III. The third point is that the court erred in sustaining the plaintiff's objection to question 672 of the cross-examination, by defendant, of the witness Baughman. By referring to the bill of exceptions, it is found that question 672 was not put to Baughman, but to Alva Lamb, by plaintiff's counsel; was objected to, by defendant, as lead-

ing and improper, and the objection was sustained. The error is probably in the counsel's brief, and will not be further considered here.

IV. The fourth point is that the court erred in sustaining the objection of the plaintiff to question 1149, on the examination of the defendant. It appears, from the bill of exceptions, that the defendant was called and sworn as a witness on his own behalf. After testifying to weighing the cattle and hogs, he stated that "the plaintiff asked him in regard to the scales, if they were correct; that witness told him they were correct, and he thought not, and got on the scales and was weighed."

Q. State what the result was of his idea.

A. He was weighed two different times, I think, on the scales, and there was some five or ten pounds' difference in his weight.

Q. State what that indicated on scales of that size.

This question was objected to by plaintiff's counsel as incompetent, and immaterial to the issue, the objection being sustained by the court. It will be sufficient to say, of this point, that there was no offer made of this testimony, nor any indication of what was expected to be proved prior to its being introduced; and it has been held, frequently, that in order to avail himself of error in the rejection of evidence, the party must have made an offer of the testimony, clearly presenting what he expected to prove. (*Matthews v. The State*, 19 Neb. 338; *Masters v. Marsh*, Id. 462; *Lipscomb v. Lyon*, Id. 522.)

V. Under this head the plaintiff in error claims that the court erred in sustaining the objections of the plaintiff below to certain interrogatories, forty-six in all, in different parts of the record. I have examined each of these rulings separately; but it is not deemed important to detail each in this opinion, as the exigencies of the case do not seem to require it, and there appears to be no reversible error involved. The plaintiff offered in evidence a portion

of the record of the former trial, embracing question 1437, and the answer set out in the bill of exceptions; also the certificate of the trial judge, to the bill of exceptions, that it contained all the evidence offered on the trial, which were admitted over the objections of defendant.

Upon the admission of this evidence the plaintiff in error places the sixth point of his brief. He states the point merely, and fails to show wherein the record is prejudicial to him; and I see no reason why it should be so regarded.

It would seem to be an accepted proposition that the record of a former trial, in the same case, between the same parties, was admissible as evidence, and in the absence of authorities or argument to the contrary, it will be so held.

The seventh, eighth, ninth, tenth, eleventh, and twelfth, points arise upon the second, third, fourth, fifth, sixth, and eighth, instructions to the jury, asked by the plaintiff and given by the court as follows:

" II—The court instructs the jury that the plaintiff was legally entitled to have his stock weighed correctly. Hence, if the jury find from the evidence that such stock was weighed incorrectly, it was the duty of defendant to correctly reweigh the same, and he could not charge the plaintiff $25 or any other sum for the trouble of such reweighing; and plaintiff's agreement to pay for such reweighing was void, and if defendant retained or received anything whatever from plaintiff, for such reweighing, even though by plaintiff's consent, the latter is entitled to recover such amount in this action.

" III—That the plaintiff was legally entitled to have his stock weighed correctly at the time of its delivery to defendant. Hence, if the jury find from the evidence that said stock was weighed incorrectly, it was the duty of the defendant to reweigh the same without allowance for his trouble, and he could not, even though the plaintiff in order to secure such reweighing agreed thereto, increase the

shrinkage above the amount originally agreed upon between the parties. And if the defendant, as a consideration to such reweighing, exacted from the plaintiff, whether with or without the latter's consent, one additional per cent, or any other amount, from the weight of plaintiff's cattle, over and above the amount originally agreed upon between the parties, then the plaintiff is entitled to recover in this action for the full amount of such additional deduction, unless the jury shall further find that the incorrection, if one existed, was a mutual and honest and unintentional mistake of the parties, and further, that said shrinkage was no more than would take place under the circumstances.

"IV—That the plaintiff was entitled to have his stock, both cattle and hogs, correctly weighed when he had delivered the same to the defendant, and if the defendant, at said delivery, incorrectly weighed said stock, or gave the plaintiff incorrect weights of the same, if said incorrect weights were less than the true weights thereof, it will be their duty to give to plaintiff in this action a sum equal to the amount which he lost by reason of such incorrect weights, such sum to be based upon the original price to be paid for said stock.

" V—That if they find from the evidence that the plaintiff's stock was weighed, when delivered to defendant, upon scales which did not weigh correctly, then, if they further find from the evidence, that upon the next day a number of hogs were weighed upon said defective scales and at once reweighed upon correct scales, then the jury are authorized to take the difference between the false and true weights of such hogs as a basis upon which to ascertain the true weight of plaintiff's stock so incorrectly weighed when delivered: *Provided*, The jury further believe, from the evidence, that the defective scales were in the same condition when the hogs were weighed as they were the day before when the plaintiff's cattle and other hogs were weighed.

" VI—That any sum less than the amount the plaintiff

was entitled to receive for his stock by the terms of the contract, which plaintiff may have received from defendant therefor, if plaintiff took the same for the purpose of getting what he could while it was offered, without abandoning the right to get more when he could, was no settlement, and is no bar to this action, unless the plaintiff expressly agreed to take what he got in full satisfaction for his stock."

" VIII—That if they find from the evidence that the defendant agreed to reweigh all of plaintiff's stock, both cattle and hogs, and was to have from plaintiff $25, and to shrink the cattle one additional per cent for such reweighing, and if they further find from the evidence that pursuant to this agreement the defendant did reweigh forty-one steers, and refused to weigh the hogs that he was to reweigh, then the defendant was entitled to no compensation for the reweighing of the forty-one steers, and any money that he withheld from the plaintiff for such reweighing, he is liable to the plaintiff for in this action, unless the jury shall further find from the evidence that said $25 was taken and deducted for the injury that it would do the cattle weighed, and not for the labor and trouble of such reweighing."

The material objections to these instructions were fully answered by the court in its opinion in the case as formerly presented in the Report, 21 Neb. 511, in which the Chief Justice, MAXWELL, says: "The defendant was to pay the plaintiff $5.35 per hundred for the steers, and $6 per hundred for the hogs. These prices were for the actual weight of the stock so delivered, and when it was found that the scales were incorrect, the plaintiff was entitled to have the stock weighed correctly, and this without payment of any consideration. Until the stock had been weighed correctly, it had not, so far as the rights of the seller were concerned, been weighed; that is, the fraudulent or incorrect weighing of the stock was not a weighing within the meaning of

the contract. The $25, therefore, which the plaintiff agreed to pay the defendant, was a mere gratuitous promise and for which he received no consideration."

In addition to what was held on the former trial, I will add that according to the contract of sale, which is made a part of the plaintiff's petition, and admitted by the defendant's answer, the stock should be weighed *at Filley*. This agreement, viewed in the light· of all the evidence, I deem to be equivalent to, and to be, in fact, an agreement on the part of defendant that upon the stock being driven to his place, on the day of delivery, he would weigh it. This important part of the contract was not fulfilled until all the stock was fairly and honestly weighed. Until that was complete, the plaintiff had a right, not only under the contract, but by the rule and custom of trade, that the same should be fairly and honestly weighed, he giving friendly assistance, by himself and employés, and the same fairly and honestly stated to him. The instructions of the court, above quoted, amount to this, and no more. The fifth instruction, however, provides that if the jury shall find that the stock was weighed, when delivered to defendant, upon scales which did not weigh correctly, and if they shall further find that on the next day a number of hogs were weighed upon the defective scales and at once reweighed upon correct scales, then they were authorized to consider the difference between the false and the true weights of the hogs as a basis from which to ascertain the true weight of plaintiff's stock, provided they should also find that the defective scales were in the same condition, when the hogs were weighed, as on the day before, when the plaintiff's cattle and other hogs were weighed. Counsel objects to this instruction on the ground that it usurps the province of the jury by finding that there were false and true weights in the transaction. I do not so understand the instruction, but think that it sufficiently leaves it to the jury to find from the evidence whether the scales upon which the stock

was weighed the first day were true scales, and gave true weights; and whether those upon which the hogs were weighed on the second day were true scales and gave true weights. Not only so, but I think the court, by this instruction, presented to the jury a correct, if not the only correct, theory and test upon which to come to a solution of the issues presented by the pleadings and established by the evidence in the case.

Counsel specially objects to the sixth instruction for that it does not require the jury to believe from the evidence the facts assumed. As I understand this instruction, it simply states a principle of law, and does not instruct the jury how to find in one event or another; neither does it assume any facts. Hence there was no occasion that it should be predicated upon what the jury *should believe from the evidence.*

Counsel also especially objects to the eighth instruction, for the reason that the excepting clause refers only to the $25, and does not mention the one per cent shrinkage. From a careful examination of defendant's testimony, I think it very doubtful that the evidence, as to the ground upon which the defendant claimed the additional one per cent shrinkage, was to compensate for the possible damage to the cattle by reweighing them; but were there no doubt on this point, while the failure of the court to include that in the exception might be regarded as an oversight, I would still not regard it as of sufficient importance to control or to influence the trial of the case.

Under the eighth assignment of error it is argued that the verdict is contrary to the evidence, and to establish this point the plaintiff in error calls attention to the fact that the evidence shows that when the cattle were weighed, on the first day, they had been driven from a distance of about five miles, and had remained standing an hour without food or water, before weighing, and were then turned into the feeding lots of defendant, and were allowed to fill up on an abundance of water, corn, and hay, for twenty-four hours,

before the second weighing.   This fact, it is argued, would account for the difference in the weight, even had both tests been correct.   These facts and all the circumstances were doubtless present, and considered in the minds of the jury, and had their full weight in bringing them to the conclusions of the verdict.

The fourteenth assignment calls attention to what is claimed to be a material error in the admission of evidence in regard to the black sow and the crazy steer.   There is a black sow mentioned by witnesses on either side, which evidence was received without objection.   It appears that the sow was bought by Filley from Billings at the gross price of $20, regardless of weight.   She was driven to the scales and weighed with nineteen others on the second day, but was subsequently reweighed and her weight taken out of the gross weight of the lot, so that I do not see that there is a probability that the jury gave any undue importance to the presence and position of the sow in the evidence.   As to the crazy steer, he was sufficiently considered in the former opinion referred to, and is assigned his status in that report, and will not again be disturbed.

Finally, under the fifteenth subdivision of the brief, attention is called to the fact, as alleged, that the case was not tried on the pleadings at all, but on new issues made by the evidence; that plaintiff claims in his petition that Filley refused to and did not reweigh the stock; that which he did reweigh was incorrectly done, and that, taking this to be true, there was no correct weighing whatever, and nothing for the jury to base their findings upon.   There is a mass of testimony taken, running through more than 200 pages, but I think it is chiefly confined to the issues presented by the pleadings — the incorrect weighing of the stock.   In addition to that quoted and referred to, I will mention that of several witnesses, on either side, to the fact that, after the weighing on the first day, and the attempt to weigh the hogs by Billings and Baughman on the second day, and the

admission by Filley that there then seemed to be something wrong in the cattle scales, and the taking off of the rack or fencing about the scales, and removing it to the grain scales, an adjusted piece of pine scantling was discovered under the north end of the platform of the cattle scales, upon which the platform and scales in some degree combined and rested, and which doubtless was considered by the jury as sufficiently condemning the integrity of the original weight of the stock. There is also evidence tending to prove that the fencing was set up around the grain scales in such manner, and the cattle crowded in upon the platform, at the second weighing, so as to prevent their entire weight from resting upon the scales; and thus in a considerable degree depreciating the value of the second weighing; and it is admitted that there was no pretense of reweighing the hogs at any time.

It will be admitted that the testimony to the jury was not such as to enable them to reach conclusions with the same degree of mathematical certainty and logical accuracy that is always desirable in controversies at law. But the comparisons of weight between that of the cattle scales, on the first day, and the office scales on the second day, before the objectionable fencing was added to the latter, gave them important data to arrive at the loss in the weight of plaintiff's stock by reason of inaccurate and faulty weighing. To this must be added the testimony of the judgment and opinion of witnesses having experience and knowledge of the questions in controversy, which, as has been shown, was properly admitted on the trial.

The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.